UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAL J. MAXWELL,

       Plaintiff,                         CIVIL ACTION NO. 11-13353

       v.                                 DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF                  MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On August 1, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny benefits between December 13, 2006 and April 21, 2008. (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the case was referred to this Magistrate Judge to review the Commissioner's decision. (Dkt. No. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. Nos. 8, 11).

    *B.    Administrative Proceedings*

An application for Supplemental Security Income was protectively filed by Plaintiff on June 10, 2005. (Tr. 13). The application was initially denied by the Commissioner on September 8, 2005. (Tr. 13). Plaintiff requested a hearing on September 21, 2005. In a decision issued June 17, 2008, the Administrative Law Judge ("ALJ") found Plaintiff not disabled. (Tr. 13). Plaintiff appealed. The Appeals Council vacated the prior decision and ordered a new

hearing be held. (Tr. 13, 37). On April 8, 2009, Plaintiff appeared with counsel before ALJ John L. Christensen, who considered the case *de novo*. In a partially favorable decision dated August 18, 2009, the ALJ found that Plaintiff became disabled *after* he reached the age of 18. (Tr. 26). On September 25, 2009, Plaintiff requested a review of the ALJ's decision to deny benefits before his 18th birthday. (Tr. 7-9). On May 27, 2011, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review (Tr. 2-4).

In light of the entire record in this case, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled before he reached the age of 18. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

Plaintiff was born on April 23, 1990 and was in the "adolescents" age group on the date the application was filed in 2005. (Tr. 18). Plaintiff was a minor who never worked. (Tr. 18). The ALJ applied a three-step sequential evaluation process to determine whether Plaintiff was disabled before he reached the age of 18. (Tr. 14).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (Tr. 18).

At step two, the ALJ found that Plaintiff had the following "severe" impairments before he reached the age of 18: adjustment disorder, anxiety disorder, depression and schizoid disorder. (Tr. 18).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listings in the regulations. (Tr. 19).

The ALJ next determined the degree of limitation in each of six functional domains, and found that Plaintiff did not have an impairment or combination of impairments that functionally equaled any of the listings. The ALJ's specific findings as to the six functional domains were: Acquiring and Using Information (Plaintiff had less than marked limitation); Attending and Completing Tasks (Plaintiff had less than marked limitation); Interacting and Relating with Others (Plaintiff had less than marked limitation); Moving About and Manipulating Objects (Plaintiff had no limitation); Caring for Yourself (Plaintiff had less than marked limitation); and Health and Physical Well-Being (Plaintiff had no limitation). (Tr. 20-24).

### B.     Administrative Record

#### 1.     Plaintiff's Testimony and Statements

At the administrative hearing on June 3, 2008, Plaintiff (then age 18) testified that he cannot drive because his hands shake. (Tr. 180). He also testified that he takes special education study skills and math classes. (Tr. 181-182). Plaintiff testified that he does not participate in extracurricular activities, and he does not have any friends. (Tr. 182). According to Plaintiff, he does not like being around people. (Tr. 184). Finally, Plaintiff testified that a voice tells him to hurt other people, and he has difficulty concentrating and absorbing information. (Tr. 185-186).

Plaintiff's father testified at both the hearing on June 3, 2008 as well as the hearing on April 8, 2009. He stated that Plaintiff was receiving treatment, but he was no longer covered under his insurance once he turned 18. (Tr. 187). Plaintiff's father also testified that Plaintiff spends the majority of his time isolated in his room talking to himself. (Tr. 168-169). Plaintiff's

father said Plaintiff had "very poor" grades, attempts to fight teachers at school, and becomes violent when he asks him to do chores around the house. (Tr. 167-168, 170).

### 2. Medical Evidence

The Court focuses on Plaintiff's medical records for the period before Plaintiff reached the age of 18; the period after Plaintiff turned 18 is not in dispute. Dr. Mark Zaroff and Dr. Nathalie Menendes drafted a Childhood Psychiatric/Psychological Medical Report on August 24, 2005. (Tr. 111-115). The doctors stated in the report that Plaintiff has not had any special testing nor did he receive any services through his school. (Tr. 115). He was diagnosed with adjustment disorder with mixed anxiety and depressed mood. Plaintiff's Global Assessment of Functioning ("GAF") score was 51.[1] (Tr. 115).

Dr. Ron Marshall completed a Childhood Disability Evaluation Form on September 7, 2005. (Tr. 117-122). He concluded that Plaintiff had an impairment or combination of impairments that are severe but that do not meet, medically equal, or functionally equal any of the listings. (Tr. 117).

On June 27, 2006, Plaintiff's father took him to the Saginaw Psychological Services for a Psychiatric Evaluation due to Plaintiff's hallucinations. (Tr. 125-127). Dr. Venkateswara Talasila found Plaintiff's concentration and eye contact were poor, he could not follow directions

---

[1] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

at school, he touched a girl inappropriately at school, and he talked back to the teachers. (Tr. 125-126). He was diagnosed with Paranoid Schizophrenia. Plaintiff's GAF score was 40. (Tr. 126). Plaintiff was prescribed medication to control his psychotic processes, anxiety, and depression. (Tr. 127). On July 28, 2006, Plaintiff's diagnosis was changed to severe depression with psychotic features. (Tr. 142).

On December 13, 2006, Dr. Miller discontinued Plaintiff's treatment with Saginaw Psychological Services because Plaintiff missed numerous sessions. (Tr. 123-124).

### 3. Vocational Expert

During the hearing on June 3, 2008, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age and educational history who has no exertional postural or manipulative limitations, cannot drive, and could only perform simple routine tasks in a low stress environment with occasional contact with the general public. (Tr. 190-191). The VE testified that a person with those limitations could perform work in the medium exertional level as a dishwasher (8,100 regional jobs) and janitor (56,600 regional jobs). (Tr. 191). The VE further testified that a person with those limitations could perform work in the light exertional level as a dishwasher (4,000 regional jobs) and janitor (21,000 regional jobs). (Tr. 191). When the ALJ added to the hypothetical that the individual cannot sustain sufficient concentration, persistence and pace to do simple routine tasks on a regular and continuing basis as a result of depression, anxiety, and auditory hallucinations, the VE testified that such restrictions would preclude employment. (Tr. 192).

The VE did not testify at the hearing on April 8, 2009. Instead, the ALJ referred Plaintiff for a psychological consultative exam. (Tr. 170).

### C. *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is contrary to the Social Security Act. According to Plaintiff, he had the same disability and limitations before he reached the age of 18 that the ALJ found were disabling after he reached the age of 18. Plaintiff believes he satisfies listing 112.04 Mood Disorders. (Dkt. No. 8; Pl.'s Br. at 5-7).

### III. DISCUSSION

#### A. Standard of Review

A court applies the same standard of review to the Commissioner's decision denying benefits to a child as to an adult, as both are governed by 42 U.S.C. § 405(g). Under that statute, the Commissioner's decision must be affirmed if it is supported by substantial evidence, even if this court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (per curiam). A court cannot reverse the agency's decision if substantial evidence also supports an opposite conclusion, but only if substantial evidence does not support the ALJ's conclusion. *Crum*, 921 F.2d at 644. It is Plaintiff's burden to establish disability. *Id.*

Although the standard of review of the Commissioner's decision is the same as for adults, children's disability claims are reviewed under criteria different from adults. There is no five step evaluation, but pursuant to the 1996 enactment of the Personal Responsibility and Work Opportunity Reconciliation Act, which changed the definition of disability for children seeking Social Security benefits, *see* 42 U.S.C. § 1382c(a)(3)(c), there is a three step sequential process in determining whether a child is "disabled." First, the child must not be engaged in substantial

gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a); *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986).

Under section 416.926a, if a child's impairment or combination of impairments does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are *functionally equivalent in severity to any of the listed impairments* of Appendix 1. (20 C.F.R. § 404, subpt. P, app. 1) (emphasis added). The following areas of development (referred to as "domains") are considered in determining whether a child's impairments are functionally equivalent to a listed impairment: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well Being. *See* 20 C.F.R. § 416.926a. A finding of functional equivalence to a listed impairment is warranted when the child has an extreme limitation in one domain of functioning or marked limitations in two domains of functioning. *See* 20 C.F.R § 416.926a(d).

Lengthy definitions for marked and extreme are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *See* § 416.926a(e)(2)(i). "Extreme"

limitation is the rating for the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. *See* 20 C.F.R § 416.926a(e)(3)(I).

### B.   *Analysis and Conclusions*

Plaintiff argues that his condition - before he reached the age of 18 - satisfies listing 112.04 Mood Disorders. Specifically, Plaintiff says he suffered from adjustment disorder with mixed anxiety and depressed mood, had moderate psychological limitations, a history of severe depression and schizophrenia, poor concentration, fatigue, poor eye contact, paranoia, auditory hallucinations, and he was enrolled in two special education classes. This generalized argument is simply not enough to disturb the Commissioner's findings.

While the ALJ did not specifically address listing 112.04, he did review and analyze the six areas of development to determine if Plaintiff's impairments were functionally equivalent in severity to any of the listed impairments of Appendix 1. Listing 112.04 reads:

> Mood Disorders: Characterized by a disturbance of mood (referring to a prolonged emotion that colors the whole psychic life, generally involving either depression or elation), accompanied by a full or partial manic or depressive syndrome.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Major depressive syndrome, characterized by at least five of the following, which must include either depressed or irritable mood or markedly diminished interest or pleasure:
>
> a. Depressed or irritable mood; or
>
> b. Markedly diminished interest or pleasure in almost all activities; or

c. Appetite or weight increase or decrease, or failure to make expected weight gains; or

d. Sleep disturbance; or

e. Psychomotor agitation or retardation; or

f. Fatigue or loss of energy; or

g. Feelings of worthlessness or guilt; or

h. Difficulty thinking or concentrating; or

i. Suicidal thoughts or acts; or

j. Hallucinations, delusions, or paranoid thinking;

or

2. Manic syndrome, characterized by elevated, expansive, or irritable mood, and at least three of the following:

a. Increased activity or psychomotor agitation; or

b. Increased talkativeness or pressure of speech; or

c. Flight of ideas or subjectively experienced racing thoughts; or

d. Inflated self-esteem or grandiosity; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high potential of painful consequences which are not recognized; or

h. Hallucinations, delusions, or paranoid thinking;

or

3. Bipolar or cyclothymic syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently or most recently characterized by the full or partial symptomatic picture of either or both syndromes);

and

B. [F]or children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Paragraph B2 of 112.02 says Plaintiff has to show at least two of the following:

    a.    marked impairment in age-appropriate cognitive/communicative function; or

    b.    marked impairment in age-appropriate social functioning; or

    c.    marked impairment in age-appropriate personal functioning; or

      d.      marked difficulties in maintaining concentration, persistence, or pace.

Even assuming Plaintiff satisfies part A of listing 112.04 (major depressive syndrome), because has depressed or irritable mood; markedly diminished interest or pleasure in almost all activities; fatigue or loss of energy; difficultly thinking or concentrating; and hallucinations, delusions, or paranoid thinking, Plaintiff does not meet paragraph B2 of 112.02 (part B of listing 112.04). The ALJ found Plaintiff had no communication deficits, no significant difficulties relating with others, no limitations with respect to caring for his personal needs, and he had not been diagnosed with attention deficit disorder. (Tr. 21-23). Plaintiff's brief does not provide a specific argument as to how the ALJ erred in his findings, or as to how he satisfies part B of the listing. Accordingly, the Court does not have any reason to find that the ALJ's findings were not supported by substantial evidence.

### IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon  
Mark A. Randon  
United States Magistrate Judge

Dated: June 6, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 6, 2012, by electronic and/or ordinary mail.*

*s/Melody Miles*  
*Case Manager to Magistrate Judge Mark A. Randon*
